IN THE MATTER OF THE FINAL ACCOUNTING OF STEPHEN T. HOPKINS AND ANOTHER, AS ADMINISTRATORS, ETC., OF SAMUEL HOPKINS, DECEASED.

*Administrators — an agreement by them not to claim commissions is valid and will be enforced.*

Two of the heirs-at-law and next of kin of a deceased person agreed with the other heirs-at-law and next of kin, who were of equal degree with them, that they would take out letters of administration, give good bonds, make an immediate and equal distribution of all securities belonging to the estate, and make a full waiver in open court of all compensation for their services as administrators. The letters were issued, the securities divided and the accounts of the administrators settled, the filing of an inventory having been waived. Upon the settlement the administrators were allowed by the surrogate full commissions upon the estate.

*Held,* that this was error; that they were estopped by the agreement from claiming the commissions.

APPEAL from a decree of the surrogate of Greene county settling the account of the administrators of Samuel Hopkins, deceased.

It was claimed by the appellants that the surrogate erred in allowing commissions to the administrators.

*J. T. & F. Werner,* for L. G. and L. Y. Hopkins, appellants

*William T. Gibson,* for S. T. Hopkins and Phebe V. Pinckney, administrators, respondents.

BOARDMAN, J.:

By exhibit A, dated January 18, 1882, Stephen T. Hopkins and Phebe V. Pinckney (two of the four heirs-at-law and next of kin of Samuel Hopkins, deceased) consent and agree with their brothers L. Gardiner and Lawrence T. Hopkins, the other two children of deceased, that they will, in the taking out of letters of administration on the estate of their father: 1st. Give a good and sufficient bond; 2d. Make immediate and equal distribution of all securities belonging to the estate.; 5th. "Make full waiver in open court for all compensation for services as administrators;" and by other clauses provide for the manner in which the assets of the estate shall be divided and administered. The said Stephen and

Phebe were thereupon and thereafter appointed administrator and administratrix, and within two days after their appointment the large mass of the estate was distributed among the four children, pursuant to the second clause of said agreement. No inventory was ever filed, because the same had been waived by the appellants. The accounts of the administrators were filed in September, 1883, and no objection being made thereto, the same were allowed and settled as filed.

Upon the facts above stated, the administrators claimed to be allowed commissions upon the whole estate and full commissions to each, which, under objection and exception by the appellants, were allowed them. Such allowance is claimed by appellants to be error.

In the absence of all evidence touching commissions, the respondents would clearly have been entitled to them. If any reason existed why commissions should not be allowed, it was competent for the appellants to establish it by proof. There was no valid objection to the evidence produced before the surrogate, under which the legal question, now to be considered, arises. The exhibit A, was in effect a contract providing that the respondents, if permitted to take out letters of administration, would waive all compensation for services as administrators, and administer the property and divide it in the manner stated in said contract. The respondents were appointed administrators, and under such contract immediately divided all the securities which constituted the bulk of the estate. By the consent of the appellants the making and filing of an inventory was waived and none was made. It was plainly an attempt to avoid expense by a summary disposition of the estate among the children, in which all took an equal part. As the appellants were equally entitled with respondents to take out letters, the waiver of such right and the allowance to respondents of letters was the basis of the contract made by the latter. If all had taken out letters, all would have shared equally in the commissions. As the estate was to be promptly divided, all taking part therein and all sharing in the labor of examination into the assets as well as the partition thereof, no reason existed why the respondents should each receive full commissions against their brothers. Certainly the respondents so thought when they signed exhibit A.

The right to commissions may be waived by the party entitled

thereto, and after such waiver he will be estopped from claiming the same. (*In re Cooper* 93 N. Y., 507, and cases cited.) This the respondents have done by their contract, exhibit A. The case shows that the estate has been settled in accordance with the provisions of that contract. Both parties have acted in reliance upon it. To allow the respondents to repudiate their contract would be to aid chicanery and dishonesty. The understanding that no commissions were to be allowed is as plain as day. All parties so under-stood. Courts will not permit justice and right to be thwarted by technicalities. The contract is valid and binding in and of itself, and also because all the parties have acted upon and performed it. It is too late now for the respondents to repudiate it after taking all its benefits.

The respondents err in supposing commissions must always and in every event be allowed to administrators or executors. As has been said, a party may be estopped from claiming them by an agreement, express or implied, or in case of executors by the terms of the will. The allowance of commissions is not mandatory or compulsory. It is a question of right to be adjudged by the surrogate. To adopt the language of Surrogate Rollins, in *Secor* v. *Sentis* (5 Redf., 570, 573), "these executors entered upon their task, as it seems to me, with an implied, it might almost be said, with a direct understanding that they would make no charge for their services. It is not apparent that they would have been selected upon any other terms than the testator specified in his will. They were not bound to accept the trust, but having done so, they are bound by its conditions." This language applies with great force to the present case. The learned surrogate further says of the statute fixing executors' commissions: "It was not intended to restrict testators either from fixing compensations to the utter exclusion of statutory allowances or from forbidding any compensation whatever." Whatever may be done by a testator in his will may, with equal effect, be done by all parties interested in an estate.

As to the settlement of the accounts of the administrators, they will stand as settled. No objection or exception thereto was taken by the appellants, nor is any now urged. The amount of $4,174.23, therefore, will stand as the balance in the hands of the administrators for distribution. But so far as commissions were allowed

to the administrators, or charged upon such balance, we think the learned surrogate erred. All parts of said decree allowing to the administrators commissions, or ordering the same paid out of the assets of said estate, are reversed, with costs of this appeal to the appellants against these respondents personally, and the proceedings are remitted to the surrogate of Greene county for resettlement of the decree of distribution in accordance with this opinion.

LEARNED, P. J., and BOCKES, J., concurred.

So ordered.